```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                    DALLAS DIVISION

TERRELL BOLTON,                  §
                                 §
                Plaintiff,       §
                                 § Civil Action No. 3:04-CV-0501-D
VS.                              §
                                 §
CITY OF DALLAS, TEXAS, et al.,   §
                                 §
                Defendants.      §
```

MEMORANDUM OPINION
AND ORDER

In this suit by a terminated Chief of Police under 42 U.S.C. § 1983 alleging that his Fourteenth Amendment rights to due process and equal protection were violated when he was discharged rather than reassigned to a lower rank, the dispositive question presented by defendants' motion for summary judgment is whether the conduct of the City Manager who discharged the plaintiff is attributable to the defendant City. Concluding that the City cannot be held liable under § 1983 for the City Manager's unauthorized departure from City policy, the court grants defendants' motion and dismisses this case with prejudice.

I

This is an action by plaintiff Terrell Bolton ("Bolton") against defendant City of Dallas, Texas ("City") and its former City Manager, defendant Teodoro Benavides ("Benavides"). Bolton served as Chief of Police of the Dallas Police Department ("DPD") from October 1, 1999 until Benavides terminated him on August 26,

2003.[1]  Bolton alleges that the City and Benavides are liable under § 1983 for violating his Fourteenth Amendment due process and equal protection rights.  Specifically, he complains that defendants violated these rights by terminating his employment rather than reassigning him to the last civil service rank he held prior to being appointed to the executive ranks of the DPD.

Appointment to the executive rank position of Chief of Police is made at the discretion of the City Manager, who, during Bolton's tenure as Chief of Police, was defendant Benavides.  In addition to Chief of Police, the appointed executive ranks of the DPD include the Deputy Chief of Police, Assistant Chief of Police, and any other positions as may be created or designated by the Chief of Police.  The civil service ranks of the DPD are (in descending order) Captain, Lieutenant, Sergeant, Senior Corporal, and Police Officer.  Unlike the executive ranks, promotions within the civil service ranks require competitive service examinations.

Before his appointment as Chief of Police, Bolton had held the executive rank positions of DPD Assistant Chief for eight years, Deputy Chief for three years, Manager of Building Security for approximately one year (a civilian position), and, before that, the civil service rank of Sergeant.  At the time he was appointed Chief

---

[1]The court recounts the evidence in a light favorable to Bolton as the summary judgment nonmovant and draws all reasonable inferences in his favor. *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

of Police, Bolton had approximately twenty years of service with the DPD.

In August 2003 Benavides determined that Bolton was unfit for the position of Chief of Police and advised him that he had been terminated. Bolton was not reassigned to a lower rank within the DPD. In a letter, Benavides listed a "series of issues" that caused him to determine that "new leadership for the [DPD was] needed." 2d Am. Compl. ¶ 18 (brackets in original). Benavides conceded that he did not terminate Bolton for cause.

Following his termination, Bolton filed this lawsuit against the City and Benavides, alleging that under Chapter XII, § 5 of the Dallas City Charter, he had a protected property interest in continued employment with the DPD and that, by arbitrarily and capriciously denying him reassignment within the DPD, Benavides and the City had violated his Fourteenth Amendment rights to due process and equal protection. Chapter XII, § 5 of the Dallas City Charter provides,

> If the chief of the police department . . . was selected to that position from the ranks of the police department and is removed from the position on account of unfitness for the discharge of the duties of the position, and not for any cause justifying dismissal from the service, the chief . . . shall be restored to the rank and grade held prior to appointment to the position, or reduced to a lower appointive rank.

Dallas, Tex., City Charter Ch. XII, § 5 (repealed 2005).

This lawsuit was initially assigned to another member of this

court. Defendants moved for summary judgment, and the court granted the motion, holding that Bolton lacked a constitutionally protected property interest in further employment with the DPD. *Bolton v. City of Dallas*, 2005 U.S. Dist. LEXIS 20543, at *8 (N.D. Tex. Sept. 20, 2005) (Kinkeade, J.), *rev'd in part, dism'd in part*, 472 F.3d 261 (5th Cir. 2006). The Fifth Circuit reversed in part, concluding that Chapter XII, § 5 of the Dallas City Charter did create a constitutionally protected property interest in Bolton's continued employment at the rank and grade held before his appointment to the executive position, and it remanded the case. *Bolton v. City of Dallas, Tex.*, 472 F.3d 261, 265 (5th Cir. 2006) ("*Bolton I*"). The Fifth Circuit dismissed Bolton's action against Benavides in his individual capacity, concluding that Benavides was entitled to qualified immunity because reasonable public officials could have differed on whether discharging Bolton would violate his constitutional rights. *Id*. at 266. Following remand and the decision of the presiding judge to recuse, the case was reassigned. Bolton filed a second amended complaint, and defendants obtained leave to file a second motion for summary judgment.

Defendants contend that the decision to terminate Bolton was not arbitrary or capricious; Bolton did not have a property interest in continued employment with the DPD because he was not appointed to the executive ranks from the sworn ranks; Benavides is entitled to summary judgment because the Fifth Circuit concluded in

*Bolton I* that he is entitled to qualified immunity; Bolton's claims for punitive damages should be dismissed because punitive damages are not recoverable under § 1983; and the City is not liable under § 1983 for Benavides's decision to terminate Bolton's employment. Bolton opposes defendants' motion.

II

The court begins with defendants' contention that Benavides is entitled to summary judgment insofar as he is sued in his official capacity. Defendants maintain that the official-capacity claim must be dismissed on the ground that it is duplicative of, and merges with, Bolton's action against the City. The court agrees.

A suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978). If the government entity receives notice and an opportunity to respond, an "official-capacity suit" is treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A suit against a municipal official in his official capacity is not a suit against the official personally, because the real party in interest is the entity. *Id.* at 166. Thus there is no longer any need to bring official-capacity actions.

Accordingly, the court dismisses Bolton's § 1983 claim against Benavides in his official capacity.

III

To recover against the City on his § 1983 claim, Bolton must establish that the City is liable for Benavides's conduct. Defendants maintain that Bolton cannot meet this burden. Again, the court agrees.

A

Although municipalities are "persons" under § 1983, *see Monell*, 436 U.S. at 690, they cannot be held liable simply on a theory of *respondeat superior*, *id.* at 691. Rather, liability obtains only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* at 694. "Normally, a plaintiff must identify a policy or custom that gave rise to the plaintiff's injury before he may prevail." *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006) (citing *Canton v. Harris*, 489 U.S. 378, 389 (1989)). "It is well-established, however, that a single decision by an official can be grounds for section 1983 liability where the decision was rendered by an individual with 'final policy making authority.'" *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Brady v. Fort Bend County*, 145 F.3d 691, 698 (5th Cir. 1998)). "Where liability is based upon a single decision by an official, '[a] court's task is to identify those officials or governmental bodies who speak with final policymaking authority for

the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *Id.* (quoting *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85 (1997) (some internal quotation marks omitted)). "[T]he identification of those officials whose decisions represent the official policy of the local governmental unit" is a question of state law "to be resolved by the trial judge *before* the case is submitted to the jury." *Jett*, 491 U.S. at 737.

B

Defendants argue that the City is not liable for Benavides's decision to terminate Bolton as Chief of Police. They maintain that Bolton cannot point to any facts regarding any official City policy or custom that deprived him of his constitutional rights, arguing that Benavides's decision not to reassign him to another position was an isolated incident that is insufficient to constitute final official policy. Defendants next argue that Bolton cannot establish liability against the City because he cannot show that his termination and the failure to reassign him to another position were the decisions of a policymaker. They posit that to determine whether the City is liable, the court must decide whether the injury was caused by the act of an employee taken pursuant to his role as a policymaker or whether the conduct was undertaken as a decisionmaker in execution of a policy for which the City is the policymaker.

Defendants argue that this case falls within the latter category. They point to various provisions of the Dallas City Charter that they allege establish that the City Council is the policymaker for all City personnel policies. Defendants maintain that although the City Manager is vested with discretion to appoint and remove directors of departments, including within the DPD, he is not the policymaker with respect to the City's employment policies. Rather, his responsibility is to implement the policies set by the City Council. Defendants contend that the Civil Service Board is the only entity authorized to make rules and regulations, which are then subject to City Council approval; there is no provision of the Charter that delegates policymaking authority to the City Manager; although the City Manager is vested with authority to hire and replace executive rank employees, that is as far as his authority extends; and if Benavides exercised his authority in an unconstitutional manner, the decision to act unlawfully was not the decision of the City.

Bolton responds that proof that an individual lacked authority to make other decisions is not relevant to the question whether he was the policymaker with respect to the precise act at issue. He maintains that defendants' argument that the City Council was the "real" policymaker fails because the City Charter specifically forbids the Council from making a decision to remove the Chief of Police.

In reply, defendants point out that Chapter XII, § 5 of the Dallas City Charter sets forth the policy of the City with respect to removing and retaining executive rank officers, and that the City Manager is responsible for administering that policy, which Benavides did when he terminated Bolton. Defendants argue that the City Charter vests all authority in the City Council and establishes that the scope of the City Manager's authority is limited to the "proper administration of all the city affairs placed in his hands." Ds. Reply Br. 15 (bold font omitted) (quoting Dallas, Tex. City Charter Ch. VI, § 2(1)). They therefore maintain that Benavides was a decisionmaker, not a policymaker, under authority conferred upon him by the City Charter, which made him responsible to the City Council for his decisions. Defendants therefore contend that if his decision to terminate Bolton was wrong, it was not the decision of the City, and the City cannot be held liable under § 1983.

C

The court will assume *arguendo* that Bolton's Fourteenth Amendment rights were violated when Benavides decided to terminate, rather than reassign, him, as required by Chapter XII, § 5 of the City Charter when a Chief of Police who is selected from the ranks of the DPD is not terminated for cause. The court will also assume *arguendo* that Bolton was selected from the ranks. Even so, Bolton cannot establish that this alleged constitutional injury was caused

by the "execution of a government's policy or custom," such that the City is subject to liability under § 1983. *Monell*, 436 U.S. at 694. Bolton does not dispute that Benavides's decision was an isolated incident insufficient to constitute an "official policy" of the City. *See* P. Br. 9 (pointing out that Bolton does not contend that the City can be liable based on a "longstanding custom or practice"). Consequently, to determine whether the City can be held liable under § 1983 for Benavides's decision, the court must decide whether Benavides "possesse[d] final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). In other words, the court must determine whether Benavides was a final policymaker with respect to the precise act in question: terminating rather than reassigning Bolton.

It is undisputed that Benavides had complete discretion to remove Bolton from the position of Chief of Police. In fact, as Bolton points out in his brief, the City Charter expressly forbids the City Council from interfering with Benavides's hiring and firing decisions. It provides:

> Neither the council nor any of its committees or members shall dictate or attempt to dictate any person's appointment to, or removal from, office or employment by the city manager or any of the city manager's subordinates, or in any manner interfere in the appointment of officers and employees in the departments of administrative service vested in the manager by this Charter.

Dallas, Tex. City Charter, Ch. III, § 15. But the Charter does not vest in Benavides any discretion regarding whether, after removing the Chief of Police from that position, he should be restored to a prior or lower appointive rank within the DPD. The Charter explicitly provides that "the chief or the assistant *shall* be restored to the rank and grade held prior to appointment to the position, or reduced to a lower appointive rank." Dallas, Tex. City Charter Ch. XII, § 5 (emphasis added). "The word 'shall' implies that restoration to a lower rank and grade is mandatory." *Bolton I*, 472 F.3d at 265 (citing *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001)).

"When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Although Benavides was vested with discretion in deciding whether to remove Bolton from the position of Chief of Police, his ability to terminate rather than reassign Bolton was constrained by the limitations of Chapter XII, § 5.

In *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992), which the Fifth Circuit cited with approval in its recent decision in *Barrow v. Greenville Independent School District*, 480 F.3d 377 (5th Cir. 2007),

> the Seventh Circuit concluded that the Chicago Police Chief, who by city ordinance had unreviewable discretion to make personnel decisions, would not have set city policy in allegedly discriminating by race. Rather, the Chief would have *violated* city policy, embodied in another city council ordinance generally forbidding racial discrimination in hiring.

*Id.* at 382. Specifically, the Seventh Circuit explained in *Auriemma* that "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Auriemma*, 957 F.2d at 400.

As set forth in Chapter XII, § 5, it was City policy at the time Bolton was discharged that when the Chief of Police is selected from within the ranks and is not removed for cause, he is entitled to continued employment with the DPD at his prior position or at a lower appointive rank. As City Manager, Benavides was "[t]o be responsible to the [city] council for the proper administration of all the city affairs placed in the city manager's hands." Dallas, Tex. City Charter Ch. VI, § 2(1). The *proper* administration of all the city affairs would certainly have required that Benavides follow the mandatory directives of the City Charter. No provision of the City Charter gave Benavides the power to make policies for the City in the area of employment or to act in contravention of the mandates of the City Charter. Benavides was vested under Chapter VI, § 2(3) with the power to remove heads

of departments and subordinate officers and employees. But in tasking the City Manager with the appointment and removal of all heads of departments, the City Charter did not give Benavides any final policymaking authority regarding what happened to these heads of departments when another Charter provision mandated their continued employment. In fact, Bolton advances several arguments in his brief that inferentially defeat his contention that Benavides was a final policymaker with respect to the decision to discharge rather than reassign Bolton. *See* P. Br. 1 (arguing that City Manager lacked discretion under City Charter to terminate rather than demote Chief of Police who came from the DPD ranks and was not discharged for cause), 6 ("Here, the City's termination of Bolton was clearly arbitrary and capricious — given that this action was contrary to law (i.e., the Dallas City Charter)."), 8 ("Benavides knew full-well that the Dallas City Charter required that Bolton be demoted[.] . . . [H]e ignored the plain language of the City Charter."), 12 ("[Benavides] did not have the discretion to simply flaunt the law. His decision to do so certainly has the hallmarks of being both arbitrary and capricious."), and 13 (referring to "the mandatory language of the Charter itself."). The court therefore concludes that Benavides's failure to follow Chapter XII, § 5 was an unauthorized departure from City policy and, as such, varied from, rather than represented, City policy. *See Auriemma*, 957 F.2d at 400. The decision to discharge rather

than reassign Bolton was a departure from the City's expressed policy, not an exercise by Benavides of final policymaking authority.

Accordingly, the court holds that the City cannot be held liable for Benavides's failure to restore Bolton to the rank and grade he held prior to his appointment to the position of Chief of Police, or his failure to reduce him to a lower appointive rank. The court therefore grants defendants' motion for summary judgment dismissing Bolton's § 1983 claim against the City.[2]

\* \* \*

For the foregoing reasons, the court grants defendants' May 7, 2007 motion for summary judgment and dismisses Bolton's § 1983 claims against Benavides in his official capacity and against the City. This case is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

August 17, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[2]Having determined that neither Benavides nor the City can be held liable for Bolton's alleged constitutional deprivations, the court need not address defendants' other grounds for summary judgment.